# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| Marco Paulo Rodrigues Lorador, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 2:21-cv-01650-GMN-BNW |
| vs. | ) | |
| | ) | **ORDER** |
| Michelle Kolev, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion for Preliminary Injunction, (ECF No. 5), filed by Plaintiffs Marco Paulo Rodrigues Lorador and Paulo Renato Rodrigues Lorador (collectively, "the Alexis Brothers"). Defendants Cirque du Soleil Nevada Newco, Inc. ("Cirque"), Treasure Island, LLC, Michelle Kolev, and Nicole Kolev (collectively, "Defendants") filed a Response, (ECF No. 18), and the Alexis Brothers filed a Reply, (ECF No. 19).[1]

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** the Alexis Brothers' Motion for Preliminary Injunction.

## I.   BACKGROUND

This case arises out of Defendants' alleged infringement of the Alexis Brothers' copyrighted hand-balancing routine "Peace and Discord" ("the Work"). Hand-balancing, or "hand-to-hand" as Cirque refers to the Work, can be described as "a type of performance in which an acrobatic base and flyer balance on top of each other in either a gymnastic or acrobatic medium . . . [i]t combines strength, agility, flexibility, and balance." *See* Wikipedia, the Free Encyclopedia, Hand to Hand Acrobatics, at https://en.wikipedia.org/ wiki/Hand_to_

---

[1] The Court will address Defendants' Motion to Dismiss, (ECF No. 16), by separate order.

hand_acrobatics (last visited Mar. 5, 2022). (*See also* Prelim. Inj. Hearing Tr. 9:46:45–9:47:46) (explaining that Cirque refers to the Alexis Brothers' Work as "hand-to-hand").

In 1991, the Alexis Brothers created their hand-balancing Work, which they published on March 12, 1994, through a public performance. (Am. Compl. ¶¶ 9–10, ECF No. 11).  The Alexis Brothers describe the Work as "abstractly conveying the dynamic between two brothers through choreographed movement and hand-balancing." (*Id.* ¶ 10).  On February 6, 2003, the Alexis Brothers registered the Work as choreography with the United States Copyright Office, receiving the registration number of PA0001133364. (*Id.*).  The Alexis Brothers provided the Court with the video of their hand-balancing Work that they submitted to the U.S. Copyright Office ("Alexis Video"), which the Court has viewed. (Alexis Video, Ex. 5 to Mot. Prelim. Inj., ECF No. 6).

Since 1997, the Alexis Brothers regularly performed the Work in Cirque Du Soleil's show "Mystere" at Treasure Island Hotel and Resort. (*Id.* ¶ 8).  Periodically, when the Alexis Brothers were unavailable to perform, Cirque licensed the Work so other performers could fill-in for the Alexis Brothers in the show. (Mot. Prelim. Inj. 7:14–16, ECF No. 5); (Marco Lorador Decl. ¶ 6, Ex. 1 to Mot. Prelim. Inj., ECF No. 5).  In early 2020, Mystere ceased performances due to the COVID-19 pandemic, which the Alexis Brothers also allege led to Cirque filing for bankruptcy. (*Id.* ¶ 12).

Over a year after Mystere closed, the Alexis Brothers learned that Cirque planned to reopen the show in July 2021. (*Id.* ¶ 13).  However, Cirque did not re-hire the Alexis Brothers to perform the Work. (*Id.*).  Instead, Cirque replaced the Alexis Brothers with two different hand-balancing performing artists: Michelle Kolev and Nicole Kolev ("the Kolev Sisters").[2]

---

[2] Mystere re-opened on June 28, 2021. (Compl. ¶ 17).  The Kolev sisters debuted in the show one month later on July 27, 2021. (*Id.* ¶ 18).  From June 28, 2021, until July 27, 2021, a different act featuring two Russian performers filled the hand-balancing segment of Mystere, but they are not accused of copying the Work. (*Id.*).

(*Id.* ¶ 14).  The Alexis Brothers claim that the Kolev Sisters' hand-balancing performance is "substantially a copy of the Work" and that Cirque has not licensed the Work from them. (*Id.*).

On September 8, 2021, the Alexis Brothers filed the present case, alleging copyright infringement under The Copyright Act of 1976, 17 U.S.C. § 502, along with their Motion for Preliminary Injunction. (*See* Mot. Prelim. Inj., ECF No. 5).  Briefing on the Motion for Preliminary Injunction was completed on November 9, 2021, and the Court set a preliminary injunction hearing for December 16, 2021. (Reply, ECF No. 19); (Order Setting Hearing, ECF No. 25).  However, the parties opted to submit supplemental briefing in in lieu of a hearing. (Order Granting Stipulation to Vacate Hearing, ECF No. 32).  Nonetheless, after reviewing the supplemental briefing, the Court scheduled another preliminary injunction hearing, which was held on February 11, 2022. (Order Setting Hearing, ECF No. 35); (Mins. Proceedings, ECF No. 36).

## II.    LEGAL STANDARD

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).  Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 20.  "[C]ourts must balance the competing claims of

injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (internal quotation marks omitted).

III.   **DISCUSSION**

   A.   **Likelihood of Success on the Merits**

       To be granted a preliminary injunction, the Alexis Brothers first must show that they are likely to succeed on the merits of their copyright infringement claim.  A successful copyright infringement claim requires that the claimant demonstrate two elements: (1) ownership of a valid copyright; and (2) copying by the defendant of the protected work's protected elements. *See Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439, 1442 (9th Cir. 1994)).  The Court will discuss each element in turn.

      **1.**   **Ownership of a Valid Copyright**

       To establish the validity of their copyright, the Alexis Brothers argue that the Court should defer to the expertise of the U.S. Copyright Office, and that because the U.S. Copyright Office accepted the Alexis Brothers' copyright registration of the Work, so should this Court. (Pls.' Suppl. Brief 3:27–4:6, ECF No. 34).  Further, the Alexis Brothers assert that the Work is "a theatrical work of just the kind copyright protects." (*Id.* 4:7–10).

       A certificate of copyright registration constitutes *prima facie* evidence of a copyright's validity, creating a rebuttable presumption of validity. 17 U.S.C. § 410(c); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *Apple Computer, Inc. v. Formula Intern. Inc.*, 725 F.2d 521, 523 (9th Cir. 1984).  17 U.S.C. § 410(c) provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

In the present case, the Court takes judicial notice[3] of the Alexis Brothers' copyright registration certificate, which is available on the U.S. Copyright Office's Public Catalog through a search of the registration number. *See Swift Park's Trading Europe B.V. v. Target*, No. SA CV 18-0536-DCC, 2018 WL 8333362, at *3 (C.D. Cal. July 5, 2018) (taking judicial notice of a copyright registration certificate by using a screenshot of the protected work's registration number search results on the U.S. Copyright Office's Public Catalog); *QOTD Film Inv. Ltd. V. Does*, No. 2:16-cv-00928-APG-GWF, 2016 WL 8735619, at *3 (D. Nev. May 6, 2016) (finding that the plaintiff is the registered owner of a copyrighted work based on the copyright's registration number).

The copyright registration reveals that the Work was published in 1994 and registered in 2003, so more than five years elapsed between publication and registration. (*See also* Compl. ¶ 10). Therefore, it is within this Court's discretion to determine whether the copyright registration certificate creates a *prima facie* case of validity. *See* 17 U.S.C. § 410(c). There is nothing in the record to undermine the validity of the registration certificate or to indicate that the Court should not accept the Work's copyright registration certificate as *prima facie* evidence of validity. To the contrary, Cirque actually licensed the Work from the Alexis Brothers in the past, respecting the validity of the copyright registration. (Mot. Prelim. Inj. 7:14–16, ECF No. 5); (Marco Lorador Decl. ¶ 6, Ex. 1 to Mot. Prelim. Inj., ECF No. 5). Therefore, the Court exercises its discretion to allow the Work's registration certificate to constitute *prima facie* evidence of validity, even though more than five years elapsed between

---

[3] The Court may take judicial notice of a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Civ. P. 201(b)(2). Courts in the Ninth Circuit have taken judicial notice of copyright registration certificates under Rule 210(b)(2). *See, e.g., Oroamerica Inc. v. D & W Jewelry Co., Inc.*, 10 Fed. Appx. 516, n. 4 (9th Cir. 2001) (Unpub. Disp.) (granting a request that the court take judicial notice of a supplemental copyright registration certificate); *Vigil v. Walt Disney Co.*, Nos. C-95-1790-MHP; C-95-1277-MHP, 1995 WL 621832, at *1–2 (N.D. Cal., Oct. 16, 1995) (taking judicial notice of copyright registration certificates).

publication and registration. *See Lifetime Homes, Inc. v. Residential Dev. Corp.*, 510 F. Supp. 2d 794, 801 (M.D. Fl. 2007) (finding that a copyright registration certificate filed seven years after publication still created a *prima facie* case of validity because "Defendants have not pointed to any evidence indicating that Plaintiff's certificate of registration is not valid."). As such, there is *prima facie* evidence of the validity of the Alexis Brothers' copyright, and the burden shifts to Defendants to rebut that presumption.

Defendants argue that the Alexis Brothers do not have a valid copyright in the Work by claiming that hand-balancing is not copyrightable choreography. (*See* Defts.' Suppl. Brief 3:3–4:9, ECF No. 33). Defendants explain that certain sequences of physical movements, such as feats of physical skill or dexterity, are not registrable with the U.S. Copyright Office as choreographic works. (*Id.* 3:19–21). Defendants assert that hand-balancing is merely a "compilation of feats of physical skill and balance" and "solely a display of physical strength," and thus, is not copyrightable as choreography. (*Id.* 3:21–27).

Copyright protection extends to works of authorship, including choreographic works, fixed in any tangible medium of expression. 17 U.S.C. § 102(a)(4). The U.S. Copyright Office defines choreography as "the composition and arrangement of a related series of dance movements and patterns organized into a coherent whole." *See* U.S. Copyright Office, Circular 52 (2021). Because this is quite a broad definition, the U.S. Copyright Office has further provided a non-exclusive list of examples of common elements of choreography, which include:

1. Rhythmic movements of one or more dancers' bodies in a defined sequence and a defined spatial environment
2. A series of dance movements or patterns organized into an integrated, coherent, and repressive compositional whole
3. A story, theme, or abstract composition conveyed through movement
4. A presentation before an audience
5. A performance by skilled individuals
6. Musical or textual accompaniment

(*Id.* at 1).  The U.S. Copyright Office clarifies that "functional physical movements, feats of physical skill or dexterity, and ordinary motor activities—in and of themselves—are not eligible for registration as choreography because these movements do not represent the type of authorship that Congress intended to protect as choreography." (*Id.* at 3).  Examples of non-copyrightable functional physical movements include: general exercise routines, athletic activities (tennis swing, golf swing, slam-dunk maneuver), feats of physical skill or dexterity, skateboarding/snowboarding tricks, yoga poses and sequences, or a compilation of any of these movements. (*Id.* at 4).

Defendants essentially argue that the Alexis Brothers' hand-balancing Work is more akin to non-copyrightable functional physical movements than to copyrightable dance movements.  However, hand-balancing is not an exercise routine, yoga sequence, skateboarding trick, or golf swing, meaning that the only non-copyrightable functional physical movement left for Defendants to analogize hand-balancing with is a "feat of physical skill or dexterity."  The U.S. Copyright Office has not provided any further instruction regarding feats of physical skill or dexterity, and Defendants have not provided the Court with a single example, either from the U.S. Copyright Office or another court, of attempted choreography labeled as non-copyrightable because it is merely a feat of physical skill or dexterity.  Therefore, it is not clear to the Court what a non-copyrightable feat of physical skill or dexterity looks like, especially when considering that copyrightable dances, such as ballet or modern dance, certainly also involve feats of physical skill and dexterity.

With that being said, the Court agrees with Defendants that the Alexis Brothers' hand-balancing Work involves incredible feats of physical skill and dexterity.  Nonetheless, the Court is unconvinced that the physical skill, strength, balance, and dexterity required to perform a hand-balancing routine detracts from the fact that the Work also encompasses well-established authorship elements of copyrightable choreography.  For example, the Alexis Video

demonstrates that the Work encompasses movements organized into a compositional whole, tells the story of the dynamic between two brothers, was regularly performed in front of Mystere's audiences, is certainly performed by skilled individuals, and is set to music. (*See generally* Alexis Video, Ex. 5 to Mot. Prelim. Inj.).

In sum, Defendants have failed to establish the line between copyrightable dance movements that include feats of physical skill or dexterity, and non-copyrightable standalone feats of physical skill and dexterity. Therefore, because the Work encompasses more elements of copyrightable dance than similarities to non-copyrightable functional physical movements, and because Defendants have not produced any examples of non-copyrightable feats of physical skill or dexterity, the Court finds that Defendants failed to meet their burden to rebut the presumption of validity in the Alexis Brothers' copyright. Thus, the copyright is presumed valid, and the Alexis Brothers have shown a likelihood of success at demonstrating a valid copyright.

### 2.    Copying of the Protected Elements of the Work

The second element of the infringement analysis requires a consideration of two factors: copying and unlawful appropriation. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–1117 (9th Cir. 2018)). "Copying can be demonstrated either through direct evidence or 'by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying,' while 'the hallmark of 'unlawful appropriation' is that the works share substantial similarities." *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020) (quoting *Skidmore*, 952 F.3d 1051, 1064 (*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)). Since there is no direct evidence of copying in this case, the Court will first discuss Defendants' access to the Work, before turning to an analysis of whether the Kolev Sisters' hand-balancing routine is substantially similar to the Alexis Brothers' Work.

### a.    Access

To successfully prove "access" in the case of a copyright infringement claim, a plaintiff must show a reasonable probability that an alleged infringer had the chance to view the protected work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).  Here, there is no doubt that Defendants had access to the Work.  The Alexis Brothers performed the Work in Mystere for approximately 23 years, which means that the Work was available to be viewed by the public for 23 years.  Therefore, Defendants could have easily accessed the Work: the Work was being performed in Cirque's own show at Treasure Island Hotel and Resort, and the Kolev Sisters certainly had the chance to attend a public performance.  A February 7, 2019, Facebook post from Michelle Kolev further confirms that the Kolev Sisters have seen the Alexis Brothers perform and have been watching videos of the Alexis Brothers for years. (Mot. Prelim. Inj. 3:18–4:11).  Accordingly, the court is satisfied that Defendants had a chance to view the protected Work.[4]

### b.    Substantial Similarity

In the Ninth Circuit, the substantial similarity test contains an extrinsic and an intrinsic component.  *Corbello*, 974 F.3d at 974 (*quoting Funky Films, Inc. v. Time Warner Ent. Co.*, L.P., 462 F.3d 1072, 1077 (9th Cir. 2006)).  "Only if the extrinsic analysis succeeds does the so-called 'intrinsic' analysis take[] place." *Id.*  The Court will discuss each in turn.

//

//

---

[4] Defendants provide a YouTube video dated February 28, 2020, of the Kolev Sisters performing the same act that they now perform in "Mystere" to demonstrate that the Kolev Sisters created their hand-balancing routine prior to being hired by Cirque, and thus, lacked access to the Work before they created their act. (See Defts' Resp. 12:20–26, ECF No. 18) (https://www.youtube.com/watch?v=qOUfTTS8Yeo).  However, this video is still dated after the Kolev Sisters' 2019 Facebook post confirming that they saw the Alexis Brothers perform. Further, Michelle Kolev's November 2021 declaration states that the Sisters created their routine "2-3 years ago," which indicates that the routine could have been created around or after the time the Sisters saw the Brothers perform in February 2019. (Kolev Decl. ¶ 6, Ex. 2 to Resp., ECF No. 18-2).  Finally, the Kolev Sisters still had access to the Work through the Mystere show for the past 23 years.

1

### i. Extrinsic Test

2   The Alexis Brothers allege that Defendants infringed on the Work because the Kolev

3   Sisters' performance copies "a dozen or so similar poses in similar sequence with similar

4   transitions." (Pls' Suppl. Brief 7:17–23, ECF No. 34).  Nonetheless, Defendants argue that the

5   Kolev Sisters' act cannot be extrinsically similar to the Work because hand-balancing poses are

6   unprotectable material for copyright purposes. (Defts' Suppl. Brief 12:1–12, ECF No. 33).

7   They also assert that, while there are some similarities between the two hand-balancing

8   performances, the majority of the transitions and poses in the parties' respective performances

9   are not executed by the other party; the entirety of the two performances are completely

10  different in concept, feel, and execution. (*Id.* 7:3–6, 19–21).

11  The extrinsic test looks to analytically dissect and break down the copyrighted work and

12  the allegedly infringing work "into their constituent elements and compare those elements for

13  proof of copying." *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (*citing*

14  *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004)).  To do so,

15
16
17
18
19
20

> [t]he extrinsic test requires a three-step analysis: (1) the plaintiff identifies similarities between the copyrighted work and the accused work; (2) of those similarities, the court disregards any that are based on unprotectable material or authorized use (non-protectable elements include ideas; historical facts; common phrases; scenes-a-faire (that is, situations and incidents that flow necessarily or naturally from a basic plot premise or generic plot line) and familiar stock scenes and themes that are staples of literature); and (3) the court must determine the scope of protection ("thick" or "thin") to which the remainder is entitled "as a whole."

21  *Corbello*, 974 F.3d at 974 (citing *Apple Computer*, 35 F.3d at 1443).

22  Here, to identify similarities between the Work and the Kolev Sisters' act, the Alexis

23  Brothers provided an 8-minute video depicting the Kolev Sisters' performance in Mystere

24  ("Kolev Video") and the 12-minute Alexis Video. (*See* Kolev Video, Ex. 4 to Mot. Prelim. Inj.,

25

ECF No. 6); (Alexis Video, Ex. 5 to Mot. Prelim. Inj.).  There are two segments[5] of the Kolev

Sisters' act that appear similar to the Work.  Segment 1 is found at minutes 2:38–3:43 of the

Kolev Video and is compared to minutes 5:50–6:38 of the Alexis Video. (Kolev Video, Ex. 4 to

Mot. Prelim. Inj., ECF No. 5); (Alexis Video, Ex. 5 to Mot. Prelim. Inj., ECF No. 5).  Segment

2, the finale of both performances, is found at minutes 6:32–8:13 of the Kolev Video and is

compared to minutes 7:53–9:30 of the Alexis Video. (*Id.*).

 To analyze the similarities within the two segments, the Court closely scrutinized each

video, individually and through side-by-side comparisons.  However, because the videos

themselves cannot be inserted into this Order, the Court will instead provide chronological

screen shots of the different poses, accompanied by a description of any differences that were

made apparent through video:

**Segment 1** (Kolev Video: 2:38–3:43; Alexis Video: 5:50–6:38):



Alexis Video 5:50

Kolev Video 2:39

In the above photos, the two sets of siblings engage in an identical pose.  The bottom sibling lies on their side on the ground, while the top sibling balances in a handstand position.

---

[5] The Alexis Brothers actually identified three segments, but the first two segments ocurr right after one another, so the Court does not see a reason to analyze them separately.



Alexis Video 5:55



Kolev Video 2:41

In the above segment, the siblings perform a similar maneuver.  Both bottom siblings flip underneath the top sibling. The bottom sibling then lifts their legs into a v-shape, opened towards the sky, before moving their legs down to the floor. The major difference in this sequence is that the bottom brother lowers his legs to the floor in a much slower and more controlled manner than the bottom sister.  Additionally, while the bottom brother ends by laying with both legs flat on the ground, the bottom sister leaves one leg flat on the ground and one bent.



Alexis Video 6:11



Kolev Video 2:54

In the above photos, the siblings perform a similar maneuver.  The bottom sibling lies on their back with their hands over their head, where they balance the top sibling.  The bottom sibling then starts moving the top sibling towards their chest, before lifting them in the air.  This sequence differs in leg positioning; the bottom sister crosses her legs on the ground while she lifts her sister.  The bottom brother puts one leg straight in the air and bends the other has he lifts his brother.



Alexis Video 6:24



Kolev Video 3:23

In the above maneuver, the siblings perform another similar pose. The bottom sibling balances their counterpart's head on one foot, bringing the other leg into the air, and then slowly lowering it back down to the

ground.  The difference is that when the bottom sister brings her leg into the air, she moves it up and down for a moment before extending it.

**Segment 2** (Kolev Video: 6:32–8:13; Alexis Video 7:53–9:30)



In the above photos, the siblings perform a very similar maneuver.  The top sibling hoists themselves up into the air while placing their hands on the bottom siblings' feet.  Each top sibling then positions their legs parallel to the ground before flipping into a headstand.  The differences are that when the top brother hoists himself up, he does so with straight legs; the top sister tucks her legs.  Then, when the top brother flips into a headstand, he keeps his legs together; the top sister opens her legs into a v-shape bringing them back together.



The above segments are identical. The top sibling holds a handstand on the bottom siblings' feet.



The above segments are identical.  The bottom sibling lowers their legs and then flips over onto their stomachs.





The above segments are identical.  The bottom sibling lowers the top sibling to the ground, lays there for a moment, and then lifts the top sibling back up.





The above segments are identical. The bottom sibling flips back onto their stomach, while balancing the top sibling on their feet.





The above segments are identical.  The bottom sibling straightens their legs, lifting the top sibling into the air.



Alexis Video 9:23



Kolev Video 8:09

The above segments are identical.  The top sibling flips off the bottom sibling.



Alexis Video 9:30



Kolev Video 8:13

The above segments are identical.  One sibling sits facing away from the other standing sibling as the lights dim and other performers enter the stage.  This ends the performances.

As an initial matter, the Court agrees with Defendants that hand-balancing poses themselves are not copyrightable elements, just as individual dance moves are not copyrightable. *Cf* Compendium of U.S. Copyright Office Practices (Third) § 805.5(A) (2021). ("Individual movements or dance steps by themselves are not copyrightable, such as the basic waltz step, the hustle step, the grapevine, or the second position in classical ballet.").  However, copyright protections do extend to "the composition and arrangement of 'a related series of dance movements and patterns organized into a coherent whole.'" *Id.*  Therefore, a collection of otherwise uncopyrightable choreographic elements, such as hand-balancing poses, are eligible to receive copyright protections under the extrinsic test when "'those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" *Gray v. Perry*, No. 2:15-CV-05642-CAS-JCx, 2020 WL

1275221, at \*3 (C.D. Cal. Mar. 16, 2020) (quoting *Satara v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003)).  Accordingly, like in dance, the sequencing and numerous transitions that make the Alexis Brothers' hand-balancing routine a work of authorship are protected, and thus, the Court could find that the similarities in the two performances constitute copyright infringement.

Since the Alexis Brothers identified similarities between the Work and the Kolev Sisters' performance, and none of those similarities are based on unprotectable material or authorized use, the remaining task for the Court in this extrinsic analysis is to determine the scope of protection.  As a threshold matter of scope, the Court first must determine whether copying a small segment of a copyrighted work still constitutes an infringement.  In this case, it is clear that the entirety of the Work has not been copied by the Kolev Sisters.  As Defendants point out, the majority of the Kolev Sisters' 8-minute performance is unique from the Work; only a few minutes of the Kolev Sisters' act, spread out over two separate segments, present a similar sequencing of poses. (*See* Defts.' Suppl. Brief 12:1–12).  However, *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 361 (9th Cir. 1947), states with regards to copyright infringement: "The whole picture need not be copied to constitute infringement.  The mere copying of a major sequence is sufficient."  Here, the two similar segments identified by the Alexis Brothers constitute a major sequence of the Work.  Though the similar segments represent only a few minutes of alleged copying, the Work and the Kolev Sisters' act are only twelve and eight minutes long, respectively, so even one minute of copying represents a major sequence, especially if that sequence includes the finale of the performance.

The Court also finds *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985), to be instructive.  *Frank Music* is a copyright infringement case concerning a musical revue show staged by the MGM Grand Hotel in Las Vegas. 772 F.2d at 509–510.  The musical revue included five songs from the copyrighted play *Kismet*, and thus, *Kismet*'s copyright owner brought a suit for copyright infringement. *Id.*  The Ninth Circuit upheld the

1   district court's determination that the show's use of these portions of the copyrighted work still
2   constituted an infringement of *Kismet*'s copyright. *Id.* at 512.  Likewise, in the present case, the
3   Court may find that Defendants' use of portions of the Alexis Brothers' hand-balancing Work
4   constitutes an infringement.

5        Finally, the Court turns to the scope of protection and finds that the Alexis Brothers'
6   hand-balancing Work is only entitled to a "thin" copyright.  As discussed above, copyrighted
7   works receive either "thick" or "thin" protection against infringement.  A copyright receives
8   "thick," or broad, protection when the possible range of protectable expression is broad, such as
9   when there are "endless variations of expression available to the artist." *McCulloch v. Albert E.*
10  *Price, Inc.*, 823 F.2d 316, 321 (9th Cir. 1987).  In contrast, a copyright receives "thin," or
11  narrow, protection "when the range of protectable expression is narrow." *See Apple Computer*,
12  35 F.3d at 1446–47.  In general, copyrights involving a combination of otherwise individually
13  unprotectable elements receive thin protection. *See, e.g.*, *Satava v. Lowry*, 323 F.3d 805, 812
14  (9th Cir. 2003).  In *Satava v. Lowry*, the Ninth Circuit found that "[the plaintiff] possesses a
15  'thin' copyright that protects against only virtually identical copying" because the copyrighted
16  work [a glass jellyfish sculpture] was comprised of a combination of elements that were already
17  in the public domain. *Id.*  The *Satava* court explained that "[the plaintiff] may prevent others
18  from copying the original features he contributed, [such as the distinctive curls of particular
19  glass tendrils, the arrangement of certain hues, or the unique shape of the jellyfishes' bells], but
20  he may not prevent others from copying elements of expression that nature displays for all
21  observers, or that the glass-in-glass medium suggests to all sculptors." *Id.*  The Ninth Circuit
22  has further found that "thin" copyright protection extends to other "collection[s] of
23  unprotectable elements—*pose*, attitude, gesture, muscle structure, facial expression, coat, and
24  texture." *Folkens v. Wyland Wordlwide*, 882 F.3d 768 (9th Cir. 2018) (emphasis added). *But*
25  *see Williams v. Gaye*, 885 F.3d 1150 (9th Cir. 2018) (finding that musical copyrights are not

limited to thin protections even though a copyrightable musical sequence is made up of unprotectable elements because musical compositions are not confined to a narrow range of expression).  In sum, thin copyrights exists when there is only a narrow range of possible expression, such as when the copyrighted work is composed of a sequence of individually uncopyrightable elements.

Here, as discussed above, the Alexis Brothers' hand-balancing Work is a collection of uncopyrightable elements. *See* Compendium of U.S. Copyright Office Practices (Third) § 805.5(A) (2021) ("The individual elements of a dance are not copyrightable for the same reason that individual words, numbers, notes, colors, or shapes are not protected by the copyright law.").  Further, like the glass mediums in *Satava* were available for use by all sculptors, the poses depicted in the Work are available to be used by all hand-balancing performers; the range of expression is narrow because the protected Work is merely a sequence of uncopyrightable elements that are already in the public domain. *Satava*, 323 F.3d at 812.  Therefore, the Court treats the protections afforded by the choreography copyright in this case as "thin." *Cf Open Source Yoga Unity v. Choudhury*, No. C 03-3182 PJH, 2005 WL 756558, at *4–5 (N.D. Cal. Apr. 1, 2005) (finding that if yoga could be copyrighted as choreography, it would only have a "thin" copyright because it would protect only the arrangement of the poses and not the poses themselves).

A "thin" copyright only protects against infringement that is "virtually identical copying." *See, e.g. Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) ("When we apply the limiting doctrines, subtracting the unoriginal elements, Ets-Hokin is left with . . . a 'thin' copyright, which protects against only virtually identical copying.").  As such, in order for the Court to find that the Kolev Sisters' performance is substantially similar to the Work for the purposes of the extrinsic analysis, the Court must determine whether either Segment 1 or Segment 2 is "virtually identical." *See Gray v. Perry*, No. 2:15-CV-05642-CAS-JCx, 2020 WL

1275221, at *3 (C.D. Cal. Mar. 16, 2020) ("For a plaintiff that seeks to apply [thin] protection to works where there is a narrow range of available creative choices, the defendant's work would necessarily have to be 'virtually identical' to the plaintiff's work in order to be substantially similar.") (internal citations omitted).  After careful comparisons of the Kolev Video and the Alexis Video, the Court finds that Segment 1 presents several instances of noticeable variation in the poses and transitions throughout the performances, particularly in the siblings' leg placement as they execute each pose, as noted above.  While Segment 1 certainly depicts two very similar performances, the consistent variations make the Court unable to determine that Segment 1 of the Work and Segment 1 of the Kolev Sisters' performance are "virtually identical."  To the contrary, Segment 2 of the Work and Segment 2 of the Kolev Sisters' performance are "virtually identical."  Though the beginning of Segment 2 reveals a minor variation in leg placement, the remaining minute and a half of the performances are completely identical.  Therefore, the Court finds that because Segment 2 is "virtually identical" in each performance, Segment 2 is substantially similar for the purposes of the extrinsic analysis.

### ii.  Intrinsic Test

The intrinsic portion of the infringement analysis is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the "total concept and feel" of the work. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  The trier of fact is required to ask whether an ordinary, reasonable observer would consider the copyrighted work and allegedly infringing works virtually identical. *Id.*  The intrinsic test "measures expression subjectively from the standpoint of the ordinary reasonable observer" with no expert assistance. *See Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115, 1134 (C.D. Cal. 2009) (quoting *Apple Computer Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)).  "While usually reserved for the trier of fact, courts may properly consider the

intrinsic test when resolving a preliminary injunction." *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1226 n.4 (C.D. Cal. 1997).

Here, since only Segment 2 survived the extrinsic analysis, the Court need only consider whether an ordinary reasonable observer would determine that Segment 2 is virtually identical. *Corbello*, 974 F.3d at 974 ("Only if the extrinsic analysis succeeds does the so-called 'intrinsic' analysis take[] place."). The Court finds that while it would be apparent to the ordinary observer that the entirety of the two performances are not identical, it would also be apparent that Segment 2 is identical because the finales of both performances have almost no variation. Any variation that does exist only becomes apparent through careful scrutinization of each video using side-by-side comparisons, frequent stops and starts, and screenshots, which are tools that may not be available to the ordinary reasonable observer, particularly at a live show. Accordingly, an ordinary reasonable observer would likely find Segment 2 to be virtually identical.

Because Segment 2 passes both the extrinsic and intrinsic tests, the substantial similarity element of the infringement analysis is also satisfied. As such, the Alexis Brothers have demonstrated a likelihood of success at showing both ownership of a valid copyright and copying of the protected elements of the Work. The Court finds that the Alexis Brothers met their burden to demonstrate a likelihood of success on the merits with respect to copyright infringement, but based only on Segment 2 of the Work.

**B. Irreparable Harm**

The Alexis Brothers claim that they suffer irreparable harm when the Kolev Sisters' perform the infringing hand-balancing act without obtaining a license because it "diminishes the originality of the Work in the public's perception." (Mot. Prelim. Inj. 20:17–19). Further, the Alexis Brothers explain that they are now unable to market the Work to prospective venues as original and exclusive. (*Id.* 20:24–26). Defendants counter that because the Work and the

Kolev Sisters' performance have differences, and because the Kolev Sisters are less athletic and experienced, the Alexis Brothers should not have an issue marketing the performance elsewhere. (Resp. 15:5–23, ECF No. 18).

In copyright cases, establishing that an infringement has occurred does not create a presumption of irreparable harm. *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011). Instead, the plaintiff must proffer additional evidence to demonstrate a likelihood of irreparable harm. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013). Evidence of irreparable harm for copyright purposes must be tied to the ultimate goals of copyright protection, namely, "the marketable right to the use of one's expression." *Cf Garcia v. Google, Inc.*, 786 F.3d 733, 744 (9th Cir. 2015) ("The justification of the copyright law is the protection of the commercial interest of the author."). The Ninth Circuit has recognized that "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).

Here, evidence of the Alexis Brothers' irreparable harm is evident because they lost the "marketable right to the use of [their] expression" when Cirque hired the Kolev Sisters to perform a portion of the Alexis' Brothers Work. *Garcia*, 786 F.3d at 744. During the preliminary injunction hearing, the Alexis Brothers explained that they expected to be re-hired by Cirque to perform in Mystere when the show reopened. (Prelim. Inj. Hearing Tr. 10:12:10–10:17:57). However, when Cirque hired the Kolev Sisters to perform a copy of the Work instead, the Alexis Brothers lost the ability to market the Work to Cirque, and thus, lost business. In short, because Cirque hired the Kolev Sisters to perform an act that the Alexis Brothers should have had the exclusive right to market, the Alexis Brothers have direct evidence of harm to their commercial interests. As such, the loss of Cirque as a prospective

customer supports a finding of irreparable harm. *See Stuhlbarg*, 240 F.3d at 841 (9th Cir. 2001).

### C. Balance of the Equities

The Alexis Brothers' claim that the balance of the equities weighs in their favor because while they are suffering irreparable harm, Cirque could easily substitute a different act in place of the Kolev Sisters, which they have done in the past. (Mot. Prelim. Inj. 21:4–9). For example, when Mystere reopened, Cirque hired two Russian performers to fill the hand-balancing segment of show from June 28, 2021, until July 26, 2021, because the Kolev Sisters did not debut until July 27, 2021. (*See* Compl. ¶¶ 17–18). Defendants argue that they cannot easily substitute a different act because the Kolev Sisters are under contract. (Resp. 15:25–16:1). Therefore, granting the preliminary injunction would create serious hardship for Cirque and the Kolev Sisters with respect to what will happen with their contract. (*Id.*). Further, Defendants explain that a hand-balancing routine takes years to create and perfect, so the Kolev Sisters could not alter their act without serious hardship. (*Id.* 16:1–8). However, during the preliminary injunction hearing, the parties reported that the Kolev Sisters are not currently performing the infringing act in Mystere because they are out of the country, and so Cirque has again employed the Russian performers to replace the Kolev Sisters. (Prelim. Inj. Hearing Tr. 9:35:23–9:35:54; 11:06:50–11:07:28). Because Cirque has demonstrated that they can replace the Kolev Sisters with performers who previously performed in Mystere, the Court finds that the balance of the equities tips in the Alexis Brothers' favor.

### D. Public Interest

Upholding copyright protections is in the public interest. *See, e.g.*, *Warner Bros. Home Entm't Inc. v. Jacek*, No. CV 13-04065, 2013 WL 12134186, at *5 (C.D. Cal. Dec. 20, 2013) (explaining that issuing a preliminary injunction is in the public interest because it "protects holders of valid copyrights and discourages copyright infringement"). Accordingly, an

injunction entered against Defendants to discourage infringement of the Alexis Brothers'
copyright supports the public interest.

### E.  Injunctive Relief

The Alexis Brothers have established: (1) a likelihood of success on the merits of their
copyright infringement claim with regards to Segment 2; (2) irreparable harm if an injunction is
not granted; (3) the balance of equities tips in their favor; and (4) an injunction is in the public
interest.  Therefore, the Court may order injunctive relief for the Alexis Brothers' copyright
infringement claim.  *See Am. Trucking*, 559 F.3d at 1052 (9th Cir. 2009) (quoting *Winter*, 555
U.S. at 20).  The Alexis Brothers request that the Court enjoin the Kolev Sisters from
performing the entirety of their act in Mystere.[6]  However, the Court finds that an injunction of
this magnitude is overbroad.

In general, injunctive relief "must be narrowly tailored to remedy the specific harm
shown." *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (quoting
*City & County of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018)).  Under 17
U.S.C. § 502(a), a district court has discretion to "grant temporary and final injunctions on such
terms as it may deem reasonable to prevent or restrain infringement of a copyright."  Further,
Nimmer on Copyright, which is commonly cited in this Circuit as persuasive authority with
regards to copyright infringement claims, explains:

> a product that slavishly reproduces a copyrighted work or in which the
> infringement permeates the whole should be wholly enjoined . . . [b]y contrast, if
> the infringing portion of defendant's work can be removed, without destroying
> the usefulness of the remainder of the work, the whole work need not be enjoined.

4 Nimmer on Copyright § 14.06 (internal citations omitted). *See also Bell v. Wilmott
Storage Servs., LLC*, 12 F.4th 1065, 1074 (9th Cir. 2021) (citing 4 Nimmer on
Copyright).

---

[6] Likewise, Defendants assert that the Court should enjoin none of the Kolev Sisters' act.

In the present case, the Court finds that "the whole work need not be enjoined" to remedy the harm caused to the Alexis Brothers by Defendants' alleged infringement of their copyright. 4 Nimmer on Copyright § 14.06.  Because only Segment 2, the finale, of the Kolev Sisters' performance demonstrates a likelihood of copyright infringement, only the continued performance of Segment 2 poses harm to the Alexis Brothers. Therefore, if the Kolev Sisters refrain from performing the finale of their act, or modify it so that it is not identical to the finale of the Work, then the harm will be remedied. This rings especially true when considering that the remainder of the Kolev Sisters' act is unique from (or at least not "virtually identical" to) the Work, and thus, cannot violate the Alexis Brothers' copyright.  In order to narrowly tailor injunctive relief to fit the specific harm shown in this case, the Court need not enjoin Defendants from performing the Kolev Sisters' entire act.  *See East Bay*, 934 F.3d at 1029.  Therefore, the Court exercises its discretion to fashion appropriate relief to prevent copyright infringement, and enjoins Defendants from performing Segment 2 of the Kolev Sisters' act. *See* 17 U.S.C. § 502(a).

**F. Bond**

A preliminary injunction must be accompanied by payment of a bond "in such a sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). "So long as a district court does not set such a high bond that it serves to thwart citizen actions, it does not abuse its discretion." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d

1113, 1126 (9th Cir. 2005) (citing *Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975)).

In the present case, Defendants argue that bond should be entered in the amount of $500,000.  Nonetheless, the Alexis Brothers assert that payment of the bond in this case should be waived because Cirque can easily substitute a different act for the Kolev Sisters' segment of the show. (Mot. Prelim. Inj. 23:5–24:3, ECF No. 5).  The Court agrees because Defendants' request for a $500,000 is not supported by any evidence.  At the preliminary injunction hearing, Defendants were neither able to provide a basis for the $500,000 calculation, nor produce any evidence of prospective damages from an injunction, especially when considering that the Kolev Sisters are not currently performing. (Prelim. Inj. Hearing Tr. 11:02:51–11:03:28). Accordingly, the Court finds that there is no evidence that Defendants will suffer harm from an injunction, and thus, the bond amount shall be zero. *See Conn. Gen. Life Ins.*, 321 F.3d at 882.

**IV.   CONCLUSION**

**IT IS HEREBY ORDERED** that the Alexis Brothers' Motion for Preliminary Injunction, (ECF No. 5), is **GRANTED in part** and **DENIED in part** to the extent consistent with this Order.  Defendants are enjoined from performing the finale of the Kolev Sisters' act.

**DATED** this _____10_____ day of March, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court